50 A.3d 558

**Judy CURTIS**

v.

**US BANK NATIONAL ASSOCIATION, etc.**

**No. 96, Sept. Term, 2011.**

Court of Appeals of Maryland.

Aug. 20, 2012.

C. Matthew Hill (Russell R. Reno, Jr. of Public Justice Center, Baltimore, MD), on brief, for appellant.

Virginia W. Barnhart (Dennis P. McGlone and Sarah E. Meyer of Treanor Pope & Hughes, P.A., Towson, MD), on brief, for appellee.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and McDONALD, JJ.

McDONALD, J.

The federal Protecting Tenants at Foreclosure Act ("PTFA") is a remedial measure addressed to the situation of a tenant whose landlord faces foreclosure. It requires a purchaser at foreclosure to provide the tenant with advance written notice whether the tenant must quit the property. The statute was intended to provide a tenant with some stability and certainty as to whether and when the tenant must vacate the tenant's residence—a policy that apparently has broad acceptance. The General Assembly has enacted a parallel Maryland statute and this Court has amended the Maryland Rules governing motions for possession following a foreclosure sale to coordinate with those laws.

The tenant in this case, Appellant Judy Curtis, had the misfortune of renting her residence from a landlord who defaulted on the mortgage on that property. Appellee U.S. Bank National Association ("USBNA"), as trustee for a mortgage-backed security that owned that debt, foreclosed on the

landlord's deed of trust and apparently decided to terminate Ms. Curtis' lease. In doing so, it sent conflicting and confusing notices to Ms. Curtis about her right under the PTFA to remain on the property temporarily and filed a premature motion for immediate possession of the property.

We hold that, when a purchaser sends a *bona fide* tenant (as defined in the PTFA) contradictory and misleading notices, one of which directs the tenant to vacate the property "immediately," and fails to correct the misleading notice, the purchaser has not met its obligation under the PTFA to provide an accurate advance notice to the tenant. A motion for possession filed by the purchaser before it has a right to immediate possession is premature. Even if a delay in the court process results in the tenant remaining in the property for a period of time equal to that contemplated by the PTFA, the circuit court should dismiss the premature motion for possession.

### Background

#### *The PTFA and the Maryland Rules*

The PTFA, which became effective on May 20, 2009, was part of the federal government's response to the recent foreclosure crisis.[1] It requires at least 90 days advance notice to a tenant who resides on a foreclosed property about whether and when the tenant must vacate that residence. In particular, in cases involving foreclosure of a residential property, "any immediate successor in interest in such property pursuant to the foreclosure"—which presumably includes a purchaser at foreclosure—must provide a *bona fide* tenant who resides on the property with a notice that advises the tenant of the right to occupy the residence for the remainder of the lease[2] or, if there is no lease or the lease is terminable at will

---

1. *See* Protecting Tenants at Foreclosure Act of 2009, Pub.L. No. 111–22, Div. A, tit. VII, §§ 701–704, 123 Stat. 1632, 1660–62, *as amended by* Protecting Tenants at Foreclosure Extension and Clarification Act, Pub.L. No. 111–203, tit. XIV, § 1484, 124 Stat. 1376, 2204 (2010).

2. The successor in interest may terminate the lease effective on sale of the residence to a purchaser who plans to occupy it as a primary

under state law, for the 90–day notice period. PTFA, § 702(a).

■ There are several qualifications to the applicability of the notice requirement, none of which affects our decision in this case. First, the foreclosure must involve a "federally-related mortgage"; there is no dispute that this case involves such a mortgage. Second, the foreclosure must take place after the date of enactment of the PTFA—May 20, 2009; again, there is no dispute that the PTFA became effective before the foreclosure at issue here. Third, the tenant must qualify as *"bona fide* tenant." [3] In this appeal, USBNA's new appellate counsel has questioned Ms. Curtis' status as a *bona fide* tenant; Ms. Curtis has argued that she does qualify. In any event, USBNA did not raise that issue in the circuit court and, accordingly, it is not preserved for our consideration.

The General Assembly amended Maryland's real property law in 2010 to provide parallel rights and obligations under State law. *See* Maryland Code, Real Property Article ("RP"), § 7–105.6(b), *as amended by* Chapters 587, 588, Laws of Maryland 2010.[4] The Maryland statute also requires that a "successor in interest" of a residential property in foreclosure provide at least a 90–day advance notice to *bona fide* tenant whether and when the tenant must vacate the property. The State statute, however, provides greater detail as to the content and method of delivery of the notice. RP § 7–

residence, subject again to the 90–day notice period. PTFA, § 702(a)(2)(A).

**3.** A tenancy is considered *bona fide* for purposes of the PTFA only if:
(1) the mortgagor or the child, spouse, or parent of the mortgagor under the contract is not the tenant;
(2) the lease or tenancy was the result of an arms-length transaction; and
(3) the lease or tenancy requires the receipt of rent that is not substantially less than fair market rent for the property or the unit's rent is reduced or subsidized due to a Federal, State, or local subsidy.
PTFA, § 702(b).

**4.** While the PTFA is scheduled to sunset in 2014, the parallel provisions of RP § 7–105.6 are not scheduled to sunset.

105.6(b)(4).[5] The foreclosure in this case preceded June 1, 2010, the effective date of amendment of RP § 7–105.6 that incorporates and elaborates upon the PTFA requirements. Chapters 587, 588, § 3, Laws of Maryland 2010. As the legislation also specifies that it does not apply to foreclosures docketed before the effective date, *id.,* § 2, the parallel provisions of the State statute do not apply in this case.

This Court amended the Maryland Rules governing foreclosure in 2009 expressly to incorporate the PTFA's requirements and in 2010 to add references to the parallel requirements of RP § 7–105.6.[6] Before the 2009 amendment, the rules provided a procedure by which a purchaser at a foreclosure sale could obtain possession of a foreclosed property "when another person in actual possession fails or refuses to deliver possession." Maryland Rule 14–102 (2009). That rule was amended to make clear that the purchaser "or successor in interest"—the broader term also encompassing purchasers used in the PTFA and RP § 7–105.6—who claims a right to "immediate possession" could file such a motion. Maryland Rule 14–102(a)(1) (2011).[7] At the same time, the rule was

---

**5.** The Maryland statute provides:

(4) The notice required under paragraph (2)(i) of this subsection shall:

(i) Be in writing;

(ii) Be sent by first-class and certified mail, return receipt requested;

(iii) State the date on which the notice is being given;

(iv) State the date on which the termination of the tenancy is effective;

(v) State whether the basis for termination of the tenancy is:

1. Expiration of the term of the lease;

2. Sale of the property to a purchaser who will occupy the property as the purchaser's primary residence; or

3. Termination of a month-to-month or other terminable-at-will tenancy.

RP § 7–105.6(b)(4).

**6.** *See* Rules Order (June 7, 2010), 37:13 Md.Reg. 840–41 (June 18, 2010); Rules Order (June 16, 2009), 36:14 Md.Reg. 954, 956–57 (July 6, 2009).

**7.** USBNA attempts to parse Rule 14–102(a)(1) to argue that only a "successor in interest"—which it distinguishes from a purchaser—must

amended to provide that, if the right to possession arose from a foreclosure sale, the motion must include:

> averments, based on a reasonable inquiry into the occupancy status of the property and made to the best of the movant's knowledge, information, and belief, establishing either that the person in actual possession is not a bona fide tenant having rights under the [PTFA] or [RP] § 7–105.6 or, *if the person in possession is such a bona fide tenant,* that the notice required under these laws has been given and that the *tenant has no further right to possession.*

Maryland Rule 14–102(a)(3) (2011). The motion must also include a copy of the notice to vacate under the PTFA or RP § 7–105.6.

■ Thus, under the PTFA and the Maryland Rules, a purchaser at a foreclosure sale must provide a *bona fide* tenant notice whether the tenant will need to vacate the property, must provide that notice at least 90 days in advance, and may move to oust the tenant only when it has an immediate right to possession at the conclusion of the notice period.

*The Price Loan, the Curtis Tenancy, and the Foreclosure*

In 2007, Harrison V. Price, Jr., refinanced a loan with respect to a single-family detached house he owned at 7908 Liberty Circle, Pasadena, Maryland. Mr. Price executed a promissory note and a deed of trust, pledging the property as

---

have a "right of immediate possession" to file a motion under Rule 14–102(a)(1). USBNA bases this interpretation on the absence of a comma and its mistaken attribution of the pre-existing committee note to the June 2009 amendments that were designed to conform the rule to the PTFA. *See* 38:14 Md. Reg. 954, 956 (July 6, 2009). But it offers no principled reasons for differentiating between purchasers and other successors in interest and there does not appear to be any such distinction in the PTFA or RP § 7–105.6—the statutes that the rule complements. In addition, this argument seems to ignore Rule 14–102(a)(3), which requires that the motion include averments that the PTFA notice has been given and "that the tenant has no further right to possession"—a provision also added in June 2009 to conform the rule to the PTFA.

security for repayment of the loan. The promissory note was assigned to a mortgage-backed securities trust for which USBNA serves as trustee.

Later that year, Ms. Curtis leased the property from Mr. Price and resided there with her children. She renewed that lease in 2009, extending it to October 31, 2010. Under the terms of the lease she paid $1,419.00 per month in rent, due on the first day of each month, for the duration of the lease.

In 2009, Mr. Price defaulted on his obligations under the promissory note. USBNA caused foreclosure proceedings to be initiated against the property. As required by State law enacted in 2009 just prior to the PTFA,[8] the lawyers acting as substitute trustees on USBNA's behalf mailed several notices addressed to the "Occupant" of the property concerning the anticipated foreclosure and the possibility of future eviction. At the time the notices were sent in this case, the statutory form required that a tenant be informed that "you could be evicted ... even if you have paid the rent due and complied with your lease." RP § 7–105.9(b)(1) (2009). Subsequently, the statute was amended and the form notice now recites the tenant's rights pursuant to the PTFA and RP § 7–105.6 instead of vaguely warning of possible eviction. Chapters 587, 588, Laws of Maryland 2010.

*Foreclosure Sale*

The foreclosure proceeding apparently took some time as the substitute trustees rescheduled the foreclosure sale twice.[9] When the foreclosure sale finally took place on June 3, 2010, USBNA was the successful bidder. The circuit court ratified the sale on November 10, 2010. After USBNA paid the purchase price, title to the property was conveyed to USBNA on November 24, 2010. USBNA recorded the deed in the land records of Anne Arundel County on December 3, 2010.

---

8. RP § 7–105.9, *as enacted by* Chapters 614, 615, Laws of Maryland 2009.

9. It does not appear that these delays in the foreclosure process were attributable to the tenant, Ms. Curtis.

In the meantime, Ms. Curtis' written lease with Mr. Price ended on October 31, 2010, according to its terms. She continued to occupy the property, however, as a month-to-month tenant and paid Mr. Price $1,175.00 in rent during October. Thereafter, she paid Mr. Price two additional rental payments of either $1,175.00 or $587.50 in November and December 2010, respectively.[10]

*USBNA Notice to Vacate and Motion for Possession*

On December 22, 2010, USBNA sent, by certified mail, two notices addressed to the "Occupant" of the property, both of which cited the PTFA. One notice, entitled "Notice to Quit and Vacate Property," advised Ms. Curtis that "the purchaser is unwilling to enter into any rental or other compensation agreement in exchange for continued occupancy of the Property" and stated that she was to "immediately vacate, quit and surrender possession of the premises." However, it also advised that she might have "certain rights with respect to the property," not otherwise specified, if she was a *bona fide* tenant. The notice indicated that she must complete an enclosed questionnaire if she believed she qualified as a *bona fide* tenant. (She completed and submitted the questionnaire on December 27, 2010.[11]).

The second notice that USBNA sent to Ms. Curtis on December 22 was entitled "Ninety (90) Day Notice." It stated that Ms. Curtis "must vacate the premises on or before March 23, 2011" and warned that, if she did not do so by that date, USBNA would proceed with "appropriate legal action to gain possession of the property."

---

10. The parties dispute whether Ms. Curtis made two payments of $1,175.00 or two payments of $587.50 in November and December 2010. Establishment of this fact may have been relevant to whether Ms. Curtis was a *bona fide* tenant, a prerequisite for application of the PTFA. As noted above, the *bona fide* nature of her lease is not at issue in this appeal.

11. In her response to the questionnaire, Ms. Curtis indicated that her lease "expired or was converted to a month-to-month tenancy" on January 1, 2011. She sent a check to USBNA for the rent due on January 1, 2011, which USBNA declined to accept.

Shortly thereafter, on January 7, 2011, USBNA filed a motion for possession under Maryland Rule 14–102. The motion stated that "the Occupant" was still in possession of the property and had "failed or refused to surrender possession" to USBNA. The motion acknowledged that "to the best of [USBNA's] knowledge, information and belief," the person in actual possession was a *bona fide* tenant and that a 90–day notice had been sent to the tenant.

After receiving a copy of USBNA's motion for possession, Ms. Curtis filed a motion to intervene in the foreclosure proceeding, which the circuit court granted. Ms. Curtis then opposed USBNA's motion for possession on the ground that it had been filed prematurely in light of the PTFA. Second, she asserted that, because she had become a month-to-month tenant, any notice to terminate her tenancy should specify the last day of a month and the advance notice required by the PTFA would have to be made 90 days before that date. In other words, the notice to vacate sent to her on December 22, 2010, should have specified March 31, 2011, rather than March 23, 2011, as the deadline for her to vacate the property.

*Circuit Court Decision and Appeal*

After a hearing on May 25, 2011, the circuit court rejected those arguments in an oral opinion and granted USBNA's motion for possession. The court reasoned that Ms. Curtis had had at least 90 days from the time she was notified of the foreclosure sale to put her affairs in order. The circuit court stayed execution of the writ of possession for 10 days and later extended that stay pending appeal. It also ordered Ms. Curtis to pay, in lieu of rent, a supersedeas bond of $1,419.00 each month into the court registry until a reviewing court resolved her appeal.

Ms. Curtis appealed to the Court of Special Appeals on June 6, 2011.[12] Prior to the appeal being considered by that court, she petitioned for a writ of certiorari, which we granted.

---

12. The defaulting landlord, Mr. Price, is not a party to this appeal. USBNA named Mr. Price as the defendant in its motion for possession

## Discussion

 A purchaser at a foreclosure sale is ordinarily entitled to possession of the property upon ratification of the sale, payment of the purchase price, and conveyance of legal title. *Legacy Funding LLC v. Cohn,* 396 Md. 511, 516, 914 A.2d 760 (2007) [13]; RP § 7–105.6(a). That general rule, however, is qualified under RP § 7–105.6 (and the PTFA) when the purchaser steps into the shoes of a landlord. If the lease was created prior to the mortgage, the purchaser at foreclosure takes the property subject to the rights of the tenant. *See* RP § 7–105.6(a); *Southern Md. Oil v. Kaminetz,* 260 Md. 443, 272 A.2d 641 (1971). Even if, as in this case, the mortgage precedes the lease, the tenant may have a right to remain on the property under the PTFA (and RP § 7–105.6(b)).[14] Under elementary principles of real property law, a tenant properly on the premises of a property has a right of possession as against a landlord. E.g., *Kessler v. Equity Management, Inc.,* 82 Md.App. 577, 586–87, 572 A.2d 1144 (1990). It follows that a landlord—or a person who has succeeded to the position of a landlord—would have no right of "immediate possession" as against a tenant legally in possession of the property under the PTFA (and RP § 7–105.6).

It is true that, in this case, Ms. Curtis likely received some advance notice of the existence of the foreclosure proceedings and the possibility of eviction, as required by State law.[15]

---

in the circuit court. Mr. Price, however, did not file an answer; nor did he join this appeal.

**13.** A purchaser may also be entitled to possession following ratification of the sale, but prior to settlement, pursuant to a court order. *Legacy Funding LLC,* 396 Md. at 515–16 & n. 3, 914 A.2d 760.

**14.** *Cf. Fontaine v. Deutsche Bank National Trust Co.,* 372 S.W.3d 257 (Tex.Ct.App.2012) (although tenancy would normally be terminated as of date of foreclosure under Texas law, under PTFA, successor in interest takes property subject to tenant's rights under lease entered into prior to notice of foreclosure).

**15.** The substitute trustees filed an affidavits in the circuit court attesting that the notices concerning the foreclosure proceedings were sent to the

While these notices about the impending foreclosure mentioned the possibility of eviction in the future, this warning was statutorily required for all tenants and would not necessarily reflect the future intention of the purchaser at the foreclosure sale. Moreover, it is not intuitively apparent that the new owner of a foreclosed residential property would always seek immediate ouster of a paying tenant.[16] For example, one might think that the unlucky investors in the certificate for which USBNA was acting as trustee would want to preserve an income stream from the property.[17]

Whatever the import of the notices sent before the foreclosure sale, the critical notices for purposes of the PTFA were those sent after the foreclosure sale by the "successor in interest" or purchaser—in this case, USBNA. Shortly after ratification of the foreclosure sale, Ms. Curtis received, in quick succession, several conflicting communications from USBNA about her ability to remain in her residence:

- one notice shortly before Christmas 2010 told her to "immediately vacate, quit, and surrender possession" but said she might have unspecified rights "with respect to the property" as a *bona fide* tenant if she filled out a question-

---

address of the residence. While the record does not indicate whether Ms. Curtis received them, she did not affirmatively contend otherwise.

**16.** As best we know from the record, Ms. Curtis had paid rent to her landlord prior to the foreclosure, attempted to pay USBNA subsequent to the foreclosure (which USBNA declined to accept), and has since paid a sum equivalent to rent into the court registry during this proceeding.

**17.** It has been documented that servicers sometimes have different incentives than investors in mortgage-backed securities. *See, e.g.,* A. Levitin & T. Twomey, *Mortgage Servicing,* 28 Yale J. Reg. 1 (2011) (incentives facing servicers of securitized mortgages frequently diverge from interests of investors in those securities); D. Thompson, *Foreclosing Modifications: How Servicer Incentives Discourage Loan Modifications,* 86 Wash. L.Rev. 755, 767–68 (2011) ("... servicers, although they may be called 'lenders' by courts and homeowners alike, are neither the originators of the loan nor the owners of most loans.... The conflict between servicers' compensation and the interests of the investors, the beneficial owners of the loans, depresses the number of loan modifications made ...").

naire (there is no dispute she promptly filled out the questionnaire);

- another notice at approximately the same time told her USBNA would take legal action *if* she did not get out by *March 23, 2011;*
- a motion served on her by USBNA during the first week of January 2011—two and half months *before* March 23— asserted its right to "immediate possession" and sought to oust her from the residence, but also conceded at that time that she was a *bona fide* tenant.

Even if Ms. Curtis had received the earlier notices about the impending foreclosure of her landlord, this succession of post-sale correspondence would have left anyone perplexed. It might be inferred that the lawyers then acting as substitute trustees on behalf of USBNA were attempting to expedite the process without regard to whether the message conveyed made sense. Or it may be that the substitute trustees were themselves confused as to their obligations under the relatively new federal statute. This case concerns the consequences of that confusion, whatever its source.

■ In our view, USBNA failed to comply with the PTFA and Maryland Rules in its efforts to oust Ms. Curtis from her residence. In particular, its notice to vacate was confusing and ineffective for purposes of the PTFA. Moreover, at the time it filed its motion for possession it did not have a right to "immediate possession"—a prerequisite to a motion under Rule 14–102—contrary to the assertions in its motion. The motion for possession that it did file was premature and at odds with the purpose of the PTFA.

This is not a purely technical point. It might be asserted that, even if a motion for possession is filed coincidentally with the 90–day notice, it is quite possible that a court would not issue a writ of possession during the 90–day period.[18] This

---

18. Indeed, in this case, Ms. Curtis has continued to occupy the residence well beyond 90 days from the foreclosure sale and USBNA's decision not to retain her as a tenant.

thus raises the question: May the lender or servicer send a bona fide tenant a notice to vacate "immediately" and file a motion for possession in anticipation of future delays in the process—or seek postponements itself until the clock strikes 90 days?

■ If the tenant takes the notice to vacate "immediately" at face value, he or she may feel compelled to vacate immediately. A tenant who chooses to stay in the face of such a notice and motion will be beset by uncertainty as to his or her immediate future in their residence. This does not serve the PTFA's goal of providing stability and adequate notice to tenants of defaulting landlord-borrowers.[19] In one reported case with similar facts, the Arizona Court of Appeals held that a bank could not cure a misleading notice to vacate by simply running out the 90–day clock. *Bank of New York Mellon v. DeMeo,* 227 Ariz. 192, 254 P.3d 1138 (App.2011). In our view, under the circumstances of this case, it is not appropriate to find that a defective notice became effective through the simple passage of time. The obligation to provide *advance* notice is a forward-looking requirement intended to allow the tenant to plan for the future. Compliance should not be measured in hindsight, particularly when a misleading notice has never been corrected. Such a "cure" would countenance violations "capable of repetition, yet evading review." *See, e.g., Hammen v. Baltimore County Police Department,* 373 Md. 440, 450–51, 818 A.2d 1125 (2003) (discussing decision to decide legal issue despite mootness).

■ Finally, Ms. Curtis has raised in this appeal the appropriate date that should appear in a notice to vacate under the PTFA when the tenant's written lease has expired but the

---

**19.** USBNA in its brief tallied the cumulative number of days that Ms. Curtis has remained in her residence since USBNA foreclosed on her landlord's deed of trust, as though that number somehow demonstrates its compliance with governing law and the merits of ousting Ms. Curtis from her residence. But that number by itself is meaningless. USBNA undoubtedly could have remedied this situation much earlier without this litigation simply by providing a revised notice that complied with the statute and filing its motion, if necessary, at the appropriate time.

tenancy continues on a month-to-month basis that ends on the last day of the month. She argues that the notice to vacate must specify the last day of a month and must be made at least 90 days before that date. Thus, in her view, a notice given on December 22, 2010, could require a tenant to vacate—at the earliest—on March 31, 2011. She is mistaken. A notice to vacate under the PTFA is not necessarily keyed to the end of a lease term. The PTFA was designed to permit a tenant to remain in his or her residence for 90 days or the duration of a *bona fide* lease, whichever is longer. *See* 155 Cong. Rec. S8978 (daily ed. August 6, 2009); *see also* C.L. Stewart, *The Protecting Tenants at Foreclosure Act: Keeping Tenants in the Loop and in their Homes*, 21 S. Carolina Lawyer 20, 22 (2010). If Ms. Curtis had received an accurate and effective notice on December 22, 2010, the longer period would have been 90 days from that date—or March 23, 2011— as her lease terminated well before that date.

### Conclusion

Under the PTFA, a purchaser at a foreclosure sale of a residential property must provide advance notice to a *bona fide* tenant on the property whether and when the tenant will be required to vacate the residence. Misleading and contradictory notices concerning the tenant's right to remain in a residence temporarily are ineffective to satisfy the purchaser's obligation under the PTFA. Moreover, a motion for possession under Maryland Rule 14–102 is premature when it is filed prior to the expiration of the period that the PTFA permits a *bona fide* tenant to remain in a residential property subject to foreclosure.

The concerns we have expressed in this case are somewhat ameliorated by the required content of the notice to vacate that the General Assembly specified in RP § 7–105.6(b)(4)— the Maryland analog that did not apply to this case. The State statute requires that the successor in interest—or purchaser—explicitly state the basis for the termination of the tenancy, the date on which the termination of a tenancy becomes effective, and the date on which the notice is being

given. When a foreclosure purchaser complies with those requirements, there will be little basis for a tenant in the same position as Ms. Curtis to claim confusion or uncertainty as to his or her legal status in the property.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY REVERSED AND CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; APPELLEE TO PAY COSTS.**