50 A.3d 567

**Camille C. SHEPHERD**

v.

**John S. BURSON, et al.**

**No. 110, Sept. Term, 2011.**

Court of Appeals of Maryland.

Aug. 20, 2012.

542

Phillip Robinson (Leigh Maddox, Anthony Depastina and M. Rebecca Lopez of Civil Justice, Inc., Baltimore, MD), on brief, for Appellant.

Bizham Beiramee (Matthew D. Cohen of Beiramee & Cohen, P.C., McLean, Virginia; William M. Savage of Shapiro Brown & Alt, LLP, Fairfax, Virginia), on brief, for Appellees.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and McDONALD, JJ.

McDONALD, J.

Among the issues that surfaced during the recent foreclosure crisis was a concern that some homeowners received insufficient warning of an impending foreclosure and, as a result, lacked time to prepare a defense or to pursue loan modification. In response, the General Assembly enacted a statute in 2008 to require that a foreclosing lender provide advance written notice to the borrower of its intention to foreclose. Among the information to be provided in that notice is the identity of "the secured party," although the statute does not specifically define that phrase. In many

instances there will be one secured party with respect to the particular deed of trust. In some instances, as in the present case, there may be more than one entity that qualifies as a "secured party" under the commonly understood meaning of the phrase. In this case, we must decide whether, in such a situation, a foreclosing party is obligated to identify all secured parties in the advance written notice to the borrower, and the consequences if the notice fails to do so.

■ We hold that a foreclosing party should ordinarily identify, in the Notice of Intent to Foreclose, each entity that is a "secured party" with respect to the deed of trust in question. However, a failure to disclose every secured party is not a basis for dismissing a foreclosure action when the notice identifies a secured party, the notice contains the other information required by the statute that allows the borrower to pursue a loan modification, the identity of the other secured party is elsewhere disclosed to the borrower well in advance of the foreclosure sale, and the borrower does not move to dismiss the foreclosure action on the grounds of defective notice for more than a year after such disclosure.

### Notice of Intent to Foreclose

Prior to 2008, most foreclosure actions were commenced in Maryland when the foreclosing party filed an Order to Docket in the appropriate circuit court together with the instrument that provided authority to foreclose and a statement of the debt. Maryland Rule 14–204 (2007). Then, as now, the authority to foreclose through an Order to Docket derived from the power-of-sale provision in the deed of trust or other security instrument. Maryland Code, Real Property Article ("RP"), § 7–105(a) (2003 Repl.Vol. & 2007 Cum.Supp.). Notice to the homeowner was required, but could be given after the foreclosure proceeding was docketed. RP § 7–105(a–1) (2003 Repl.Vol. & 2007 Cum.Supp.).

In 2007, in response to rising loan default and foreclosure rates in Maryland, the Governor created the Maryland Homeownership Preservation Task Force (the "Task Force").

Among other things, the Task Force was charged with reviewing the laws governing the foreclosure process and recommending changes.   Maryland Homeownership Preservation Task Force Report (November 29, 2007) ("Task Force Report").

The Task Force found that the foreclosure process in Maryland was designed to operate expeditiously and, in theory, could result in a sale as soon as 15 days after the filing of the Order to Docket, with relatively little notice to the borrower. Task Force Report at 35–36.  The Task Force also concluded that existing notice requirements "generally fail to capture the attention of the homeowner in crisis to alert them to a pending foreclosure action, and the process does not afford homeowners adequate time to mitigate their loss or present defenses to the foreclosure action."  Task Force Report at 36.

To address those issues, the Task Force recommended legislation that would preclude the filing of an Order to Docket until at least 90 days after the borrower's default and at least 45 days after a notice of intent to foreclose had been sent to the borrower.  Task Force Report at 36–37.  The proposed notice requirement was apparently derived from similar legislation proposed in Massachusetts.  *Id.* at 37. While the Task Force did not agree on the precise content of the notice, it did agree that it should be in a standardized format and that the lender or mortgage note holder should send a copy of the notice to the Commissioner of Financial Regulation, as well as the borrower.  *Id.*

The General Assembly adopted those recommendations in emergency legislation enacted in 2008.  Chapters 1, 2, Laws of Maryland 2008.  The legislation provided that a foreclosure action generally may not be filed against a residential property until at least 90 days after the borrower defaults on the loan.  RP § 7–105.1(b)(1)(i).  In regards to notice, the statute required written advance notice to the borrower at least 45 days before the initiation of foreclosure proceedings.  Among other things, that notice is to contain the names and telephone numbers of the following:  the secured party;  the mortgage

servicer, if applicable; and an agent of the secured party who is authorized to modify the terms of the mortgage loan. RP § 7-105.1(c)(4)(ii)(1). "Secured party" is not defined in the statute.

This case concerns the appropriate definition of the "secured party" that must be identified in the Notice of Intent to Foreclose required by RP § 7-105.1(c), and the fulfillment of that notice requirement.

### The Shepherd Loan and Foreclosure

*2007–2008: Loan and Default*

On April 27, 2007, Camille Shepherd, an attorney residing in Greenbelt, obtained a loan of $416,900 from the Independent National Mortgage Corporation, FSB ("IndyMac Bank"), secured by a deed of trust on her home. Shortly thereafter, IndyMac Bank went into receivership and its assets, including Ms. Shepherd's debt, were transferred to a newly created bridge bank, IndyMac Federal Bank, FSB ("IndyMac Federal"). On August 18, 2008, Ms. Shepherd entered into a loan modification agreement with IndyMac Bank[1] that lowered the interest rate on her loan and, as a result, reduced the monthly payment.

Ms. Shepherd failed to make the monthly payment due in November 2008 and defaulted on the loan. The bank took no immediate action with respect to the default.

*2009: Notice of Intent to Foreclose—Stay by First Bankruptcy Petition*

On March 19, 2009, IndyMac Federal transferred its assets, including Ms. Shepherd's loan, to another newly created bank, OneWest Bank FSB. On June 5, 2009, the substitute trustees,[2]

---

1. The loan documents identify the lender as "IndyMac Bank." It is unclear whether the actual institution that owned the loan at this time was IndyMac Federal and, if so, why the loan documents did not identify IndyMac Federal as the lender.

2. The original trustee on the deed of trust was Fidelity National Title Insurance Co. The deed of trust permitted the holder of the note—in

on behalf of OneWest, sent Ms. Shepherd a Notice of Intent to Foreclose pursuant to RP § 7–105.1. The Notice, on stationery of the substitute trustees, was in a standard format established by the State Commissioner of Financial Regulation. Among other things, it listed the borrower, the mortgage loan number, the dates of the most recent loan payment and of the default, and the extent to which loan payments were past due. It identified the "secured party" on the loan as OneWest and provided the name and phone number of a person with authority to modify the terms of the loan.

On June 26, 2009, Ms. Shepherd filed a bankruptcy petition under Chapter 7 of the Bankruptcy Code,[3] which automatically stayed the foreclosure proceeding. In a schedule attached to that petition she identified OneWest as a secured creditor as a result of the assignment from IndyMac Federal. On August 4, the Bankruptcy Court lifted the stay as to OneWest "so as to enable it to exercise its rights under state law[.]" In October 2009, Ms. Shepherd received a discharge from other debts in the Chapter 7 proceeding.

*2009–2010: Filing of Foreclosure Action—Stays by Second and Third Bankruptcy Petitions*

After the bankruptcy stay was lifted, the substitute trustees initiated the instant foreclosure action on October 28, 2009, in the Circuit Court for Prince George's County. Among the various documents filed to commence the action was a copy of the Notice of Intent to Foreclose which, as indicated above, identified OneWest as "the secured party," and an Affidavit Certifying Ownership of Debt Instrument, which identified the Federal Home Loan Mortgage Corporation ("Freddie Mac")

---

this case, OneWest—to appoint successor trustees for the original trustee. OneWest appointed the attorneys who acted as substitute trustees in conjunction with the foreclosure proceeding.

**3.** In a Chapter 7 proceeding, an individual "give[s] up property which is not 'exempt' under the law, so the property can be sold to pay creditors. Generally, those who file Chapter 7 keep all of their property except property which is very valuable or which is subject to a lien which they cannot avoid or afford to pay." 18–CS4 Collier on Bankruptcy § CS4.03 (16th ed. 2012).

as the owner of the loan and OneWest as the holder of the note secured by a deed of trust.[4]  Ms. Shepherd was served with the documents the following day.  This was apparently the first time that Freddie Mac's involvement was disclosed to Ms. Shepherd, as it had not been listed as a secured party in the Notice of Intent to Foreclose.  The foreclosure sale was scheduled for February 9, 2010.

On February 8, 2010, one day prior to the scheduled sale, Ms. Shepherd filed a second bankruptcy petition, this time under Chapter 13 of the Bankruptcy Code,[5] which again stayed the foreclosure proceeding.  A schedule attached to that petition, like the schedule accompanying her earlier petition, identified OneWest as a secured creditor, although the documents filed three months earlier in the foreclosure proceeding had notified her that Freddie Mac now owned the loan and that OneWest was the holder of her promissory note.  The second bankruptcy action was dismissed in June 2010.

The foreclosure sale was then rescheduled for September 14, 2010.  On September 13, however, Ms. Shepherd filed another Chapter 13 bankruptcy petition; on the schedules in that proceeding, she again identified OneWest as a secured creditor.  That petition was also dismissed, and the foreclosure sale was rescheduled for January 2011.

*2010–2011:  Motion to Dismiss Foreclosure Action*

On December 15, 2010, Ms. Shepherd moved to dismiss the foreclosure sale pursuant to Maryland Rule 14–207.1, based on

---

4.  Among the other documents filed by the substitute trustees with the Order to Docket were an Affidavit of Date and Nature of Default; an Affidavit Certifying Ownership of Debt Instrument and that Copy of Note is a True and Accurate Copy; and a Statement of Debt.  The Statement of Debt also identified OneWest as the holder of the note.  The substitute trustees also filed, at a later date, an Affidavit of Mailing to All Occupants "Important Notice" Pursuant to Article–Real Property 7–105.9(b)(1) and Maryland Rule 14–209(c), and an Affidavit Pursuant to Maryland Rule 14–126(c).

5.  A Chapter 13 proceeding is "a type of 'reorganization' used by individuals to pay all or a portion of their debts over a period of years using their current income."  18–CS4 Collier on Bankruptcy § CS4.03 (16th ed. 2012).

irregularities in the Notice of Intent to Foreclose.[6] Specifically, citing the documents the substitute trustees had filed in the foreclosure action and served on her more than a year earlier that identified Freddie Mac as the owner of her loan, she contended that the failure to identify Freddie Mac as the secured party in the notice violated RP § 7–105.1(c)(4)(ii)(1)(A). The circuit court canceled the foreclosure sale to afford review of the motion.

The circuit court ultimately denied the motion on January 3, 2011. It noted that RP § 7–105.1 did not provide a remedy for the alleged violation and indicated that it would exercise its discretion under Maryland Rule 1–201(a)[7] to decide what remedy, if any, was appropriate. Reasoning that any deficiency in the notice had not prejudiced Ms. Shepherd or infringed her substantive rights, the circuit court concluded that the foreclosure action should not be dismissed.

Ms. Shepherd moved for reconsideration, arguing that the court's reliance on Maryland Rule 1–201 was an unconstitutional use of a court rule to negate the requirements of a statute. Adopting the reasoning offered by the substitute trustees in their response to that motion, the circuit court on March 7, 2011, denied the motion on the additional basis that the Notice of Intent to Foreclose had not violated RP § 7–105.1(c).

*2011–2012: Foreclosure Sale—Exceptions—Appeal*

Following denial of the motion to reconsider, the foreclosure sale was held on March 8, 2011. Freddie Mac purchased the

---

6. Maryland Rule 14–207.1 provides that "[i]f the court determines that the pleadings or papers filed do not comply with all statutory and Rule requirements, it may give notice to the plaintiff and each borrower, record owner, party, and attorney of record that the action will be dismissed without prejudice ..."

7. The court quoted the following excerpt from that rule:

If no consequences are prescribed, the court may compel compliance with the rule or may determine the consequences of the noncompliance in light of the totality of the circumstances and the purpose of the rule.

Maryland Rule 1–201(a).

property for $237,276. Ms. Shepherd filed exceptions reiterating her allegation that the notice was defective. Those exceptions were denied and the circuit court ratified the sale.

Ms. Shepherd noted a timely appeal to the Court of Special Appeals. Prior to briefing or a decision in that court, she petitioned this Court for a writ of certiorari, which we granted.

## Discussion

Ms. Shepherd argues that "the secured party" mentioned in RP § 7–105.1(c) is necessarily the owner of the loan, and that a mortgage servicer—even if a holder of the promissory note—cannot also be "the secured party." As Freddie Mac is the owner of her loan,[8] she asserts that it, and not OneWest, is "the secured party" that should have been identified in the Notice of Intent to Foreclose that the substitute trustees sent to her prior to the foreclosure action. In addition, she argues that the failure to identify Freddie Mac in that Notice meant that the Notice was "bogus" and deceptive and therefore ineffective. She also reiterates her contention that the circuit court improperly used Maryland Rule 1–201 to "trump" the statutory requirement. For those reasons, she asserts that the foreclosure action should be dismissed.

*The Secured Party*

■ An initial question is the meaning of "the secured party" for purposes of the notice requirement in RP § 7–105.1(c). As noted above, the statute itself does not define that phrase. In the absence of a statutory definition or cross-reference, it is reasonable to conclude that the Legislature contemplated a meaning consistent with the commonly understood meanings of the phrase in connection with residential mortgages and deeds of trust at the time it enacted the statute. *See Board of Education v. Lendo,* 295 Md. 55, 63, 453 A.2d 1185 (1982). Informative in this regard are the statutes

---

8. While it is not clear from the record when Freddie Mac became the owner of the loan, it is apparently undisputed that Freddie Mac was the owner of the loan at the time the Notice of Intent to Foreclose was sent.

that determine the rights of secured parties and the court rules that govern foreclosure proceedings.

A deed of trust secures a promissory note that embodies the promise to repay a loan. The promissory note and related security interests are subject to the Maryland Uniform Commercial Code ("Maryland UCC"), Maryland Code, Commercial Law Article ("CL"), § 1–101 *et seq. See, e.g., Anderson v. Burson,* 424 Md. 232, 246, 35 A.3d 452 (2011) ("[t]he ... Commercial Law Article governs a negotiable promissory note that is secured by a deed of trust"). In the Maryland UCC, "secured party" is defined as:

(A) *A person in whose favor a security interest is created or provided for under a security agreement,* whether or not any obligation to be secured is outstanding;

(B) A person that holds an agricultural lien;

(C) A consignor;

(D) *A person to which* accounts, chattel paper, payment intangibles, or *promissory notes have been sold;* or

(E) *A trustee,* indenture trustee, *agent,* collateral agent, or *other representative in whose favor a security interest* or agricultural lien *is created or provided for;* or

(F) A person that holds a security interest arising under § 2–401, § 2–505, § 2–711(3), § 2A–508(5), § 4–210, or § 5–118 of [the Maryland UCC].

CL § 9–102(a)(73) (emphasis added). Under this definition Freddie Mac is certainly a secured party with respect to Ms. Shepherd's promissory note, as an entity to which the promissory note has been sold. However, that does not mean that OneWest does not also qualify as a secured party, as the definition can encompass trustees and agents in some instances.

The court rules yield a similar conclusion.[9] At the time the Legislature enacted RP § 7–105.1 in 2008, the court rules

9. Ms. Shepherd urges us to ignore the definition in the court rules. She quotes the preamble to the definitions in the foreclosure rules,

governing foreclosure defined "secured party" for purposes of a foreclosure action as follows:

> "Secured party" means a mortgagee, *the holder of note secured by a deed of trust,* a vendor holding a vendor's lien, a condominium council of unit owners, a homeowners' association, a property owners' or community association, and any other party secured by a lien. *"Secured party" includes an assignee or successor in interest of a secured party.*

Maryland Rule 14–201(b)(10) (2008) (emphasis added).[10] Again, Freddie Mac is a secured party under this definition as an assignee or successor in interest of the prior owner of the note. OneWest is also a "secured party," as the holder of Ms. Shepherd's note,[11] under that definition.

---

which states that they apply "[i]n the Rules in this Chapter," and argues that the definition of "secured party" should not be referenced in the interpretation of a statute such as RP § 7–105.1. While she is correct, in a technical sense, that the foreclosure rules cannot control the definition of terms in statutes, it is quite evident that the Legislature and this Court, in its rule-making capacity, intended for the statute and rules to be interpreted consistently.

Ms. Shepherd also argues that reference to the definition in the court rules is an unconstitutional use of a rule to "trump" a statute. However, our consideration of the rule is part of our effort to discern legislative intent as to an undefined statutory term, not to override it. A venerable principle of interpretation holds that statutes (or rules) that concern the same subject matter—in the Latin phrase, *in pari materia*—should be construed consistently with each other. *See, e.g., Johnson v. State,* 274 Md. 29, 41–42, 333 A.2d 37 (1975). Absent a clear indication of contrary legislative intent, it is reasonable to presume that the Legislature intended that its enactment should be construed harmoniously with an existing court rule on the same subject.

**10.** The rules governing foreclosure were revised significantly in 2009 and 2010, in part to coordinate with the newly enacted RP § 7–105.1. The definition of "secured party," while recodified and revised slightly, continues to encompass an assignee or successor interest, as well as a "holder of a note secured by a deed of trust ..." Maryland Rule 14–202(q) (2012).

**11.** Ms. Shepherd does not concede that OneWest is the holder of the note or was the holder of the note when the Notice of Intent was sent. She describes OneWest, rather, as a transferee of the loan for the specific purpose of acting on Freddie Mac's behalf in the bankruptcy and foreclosure proceedings. She contends that, given this status, it

Finally, it is notable that the Commissioner of Financial Regulation, in carrying out a legislative directive to devise forms and adopt regulations implementing the 2008 revisions of the foreclosure process,[12] has cross-referenced the definition of "secured party" in the foreclosure rules. COMAR 09.03.12.01B(23).[13] The Commissioner's adoption of the definition in the court rules is entitled to some deference, given the specific legislative delegation to that official to adopt regulations with respect to the notice requirement. *Cf. Sec'y Dep't of Pub. Safety & Corr. Servs. v. Demby,* 390 Md. 580, 604–5, 890 A.2d 310, 325 (2006).

*Fulfillment of Requirement to Identify Secured Party in Notice*

The determination that OneWest is a secured party for the purposes of RP § 7–105.1(c) does not resolve this appeal. Ms. Shepherd is correct that Freddie Mac is also a secured party with respect to her loan. Under the broad definition of "secured party" in both the Maryland UCC and the foreclosure rules, there may—as in this case—be more than one secured party. Yet the statute requires that a Notice of Intent to Foreclose contain the name and telephone number of "*the* secured party." RP § 7–105.1(c)(4)(ii)(1)(A) (emphasis added). This provokes the question whether a Notice of Intent to Foreclose may name *any* secured party, must name

---

was unlikely that OneWest was a holder of the note when the Notice of Intent was sent on June 5, 2009.

Ms. Shepherd did not make this argument in the circuit court. In any event, the copy of the note contained in the record indicates that it was originally held by IndyMac Bank. It is undisputed that IndyMac Bank's assets were subsequently transferred to IndyMac Federal and, in March 2009—approximately three months before the Notice of Intent to Foreclose was sent—IndyMac Federal sold its assets to OneWest Bank.

**12.** *See* RP § 7–105.1(c)(4)–(5) (directing the Commissioner of Financial Regulation to prescribe the form of the Notice of Intent to Foreclose and to determine other information that should be included in the Notice).

**13.** The cross reference to the definition of "secured party" in the court rules was added to the regulation in 2011. *See* 38:23 Md. Reg. 1416 (October 25, 2011).

*one particular* secured party, or must name *every* secured party. In other words, in the present case, was it sufficient for the Notice of Intent to Foreclose to identify one secured party—OneWest—or should it have identified Freddie Mac as well as (or instead of) OneWest?

■ It is useful to consider the purpose of the notice. The notice requirement was designed to provide homeowner/borrowers at risk of foreclosure with additional time and information to avoid foreclosure. *Maddox v. Cohn*, 424 Md. 379, 387, 36 A.3d 426 (2012). A clear identification of a party with whom the homeowner could negotiate a possible alternative to foreclosure was a preeminent purpose.[14] The Task Force's recommendation of advance written notice "was based on proposed legislation in Massachusetts that requires as a prerequisite to filing foreclosure the sending of a Notice of Intent to Foreclose . . . [and] requires that the Notice be uniform and include fact of default and that foreclosure can be filed after the period, *the contact information of all involved (servicer, assignee, mortgage company, etc.)* and resources for assistance." Task Force Report at 37 (emphasis added). However, the Task Force was apparently unable to reach a consensus on the precise content of a notice form.

When it enacted the legislation based on the Task Force recommendation, the Legislature specified the following content for the notice:

1. The name and telephone number of:

A. The secured party;

---

14. In describing the benefits of that requirement in the notice, a proponent of the 2008 legislation explained that "[t]he complexity of the securitization and secondary market sales of mortgage loans in foreclosure further exasperates an already confusing and urgent process. Once the note holder is identified, reaching a representative of the lender that is authorized to modify the mortgage loan or review the account to verify accuracy is almost an insurmountable obstacle and one that can rarely be achieved in time to stay the sale." Testimony of Anne Balcer Norton, Director, Foreclosure Prevention, St. Ambrose Housing Aid Center, Inc., before Senate Judicial Proceedings Committee in support of Senate Bill 216 (February 5, 2008).

B.   The mortgage servicer, if applicable;  and

C.   An agent of the secured party who is authorized to modify the terms of the mortgage loan;

2.   The name and license number of the Maryland mortgage lender and mortgage originator, if applicable;

3.   The amount required to cure the default and reinstate the loan, including all past due payments, penalties and fees [.]

RP § 7–105(c)(4)(ii)1.–3. The Legislature authorized the Commissioner of Financial Regulation to require other information and delegated to the Commissioner the creation of a notice form.  RP § 7–105.1(c)(4)(i), (ii)5–7.

The form devised by the Commissioner contemplates circumstances under which an entity servicing a loan is also identified as "the secured party," as the relevant line on the form is labeled "Name of Loan Servicer (if different from Secured Party)." *See* COMAR 09.03.12, Appendix A. It is not clear, however, whether the proviso on the form is meant to cover only situations in which a lender services its own loans or contemplates situations—as the instant case—in which a servicer that does not currently own the loan also happens to be a secured party.  The form provides that "[i]f the secured party is a trust, real estate mortgage investment conduit ("REMIC"), or the like, the secured party may insert the telephone number of its authorized loan servicer."  Thus, when the secured party is a legal entity that functions as a passive investment vehicle (and likely has no physical component) rather than a financial institution, the form requires identification of the entity but allows for the option of providing contact information of the servicer alone.  The Commissioner has thus construed the statute to require identification of the actual secured party coupled with a practical means of pursuing loan modification.[15]

---

**15.**   Identification of the secured party in addition to the servicer can be important as servicers sometimes can have different incentives than the owners of a debt with respect to the desirability of negotiating a loan modification as we have noted in another context.  *See Curtis v. U.S.*

■ In sum, neither the statute nor its legislative history appear to contemplate explicitly situations in which there would be multiple entities that would each qualify as a "secured party" with respect to a deed of trust subject to an impending foreclosure. In our view, the statutory purpose of providing the borrower with advance notice and information to seek a loan modification or to negotiate some other alternative to foreclosure is best served by identifying all secured parties—particularly any that will share in the proceeds of a foreclosure sale—in the Notice of Intent to Foreclose.

*Whether the Foreclosure Proceeding Should be Dismissed*

Ms. Shepherd characterizes the Notice of Intent to Foreclose that she received as "unfair," "deceptive," "misleading," and "bogus." She says the omission of Freddie Mac from the notice "utterly lacks in transparency" and "negatively impacts upon the integrity of the judicial process itself." She contends that dismissal of the foreclosure action is required.[16]

■ Ms. Shepherd's preferred adjectives do not fit the notice in this case; "incomplete" seems a more apt description. Moreover, it is difficult to conclude that Ms. Shepherd was deceived or otherwise treated unfairly in the foreclosure proceeding.[17] The evident purpose of the written notice required

---

*Bank Nat'l Ass'n,* 427 Md. 526, 537 n. 17, 50 A.3d 558, 565 n. 17 (2012), 2012 WL 3553316, at *5 n. 17.

**16.** In her reply brief, Ms. Shepherd suggested that Freddie Mac was motivated to conceal its ownership of her loan to avoid a dispute over whether a government-sponsored enterprise or "GSE"—as Freddie Mac is sometimes characterized—is exempt from state recordation and transfer taxes. She did not explain how Freddie Mac could benefit in this regard from the substitution of OneWest—a private entity presumably subject to such taxes that would pass on the expense to Freddie Mac—and apparently abandoned this contention at oral argument.

**17.** This is not a situation in which the foreclosing party provided an advance notice with materially misleading information concerning an individual's rights or obligations in connection with a foreclosure. *Cf. Curtis v. U.S. Bank NA,* 427 Md. 526, 50 A.3d 558, 2012 WL 3553316 (2012) (contradictory and misleading notices served on tenant of de-

by RP § 7-105.1(c) is to provide some advance warning to the defaulting borrower of the foreclosure proceedings; the identification of "the secured party" and other specified information is to allow the borrower to pursue a modification of the loan or other action to forestall foreclosure. Here there is no dispute that Ms. Shepherd received written notice not just 45 days, but more than four months in advance of the filing of the foreclosure action. The written notice included details to allow her to seek a loan modification, including the name and phone number of a specific individual. She was well aware of the potential to negotiate a loan modification, as she had previously negotiated a modification of the same loan.

To the extent that her complaint is that she wished to seek a loan modification directly from Freddie Mac and not through OneWest or the individual designated in the notice, Freddie Mac's status was hardly a secret. Freddie Mac's ownership of her loan was disclosed to her by at least October 2009—four months before the first scheduled foreclosure sale and nearly 18 months before the foreclosure sale that actually took place—both well in excess of the 45-day interval contemplated in RP § 7-105.1. There is no indication in the record that she attempted to contact Freddie Mac during that period. Indeed, she did not file a motion to dismiss the foreclosure proceeding based on the failure to name Freddie Mac in the Notice of Intent to Foreclose for more than a year after Freddie Mac's ownership of her loan was disclosed to her. Nor has she suggested what she would have done differently had Freddie Mac also been identified earlier as a secured party in the Notice of Intent to Foreclose. It is thus unsurprising that she has some difficulty articulating any specific harm she has suffered from that omission. For that same reason, the circuit court concluded that it was unnecessary to devise a remedy.

This case is not unlike *U.S. Bank Nat'l Ass'n v. Guillaume*, 209 N.J. 449, 38 A.3d 570 (2012), in which the New Jersey

---

faulting landlord/borrower concerning tenant's statutory right to remain in residence for specified period following foreclosure sale).

Supreme Court considered the application of a similar notice provision in the New Jersey Fair Foreclosure Act. Like RP § 7–105.1(c), the New Jersey statute required that a foreclosing party provide a defaulting homeowner with a written advance notice of its intention to foreclose. The written notice was to include the name and address of the "lender," as well as contact information for the servicer for purposes of seeking a loan modification. In *Guillaume*, the notice served in advance of the foreclosure action included the name and phone number of the servicer, but did not name the lender. After the commencement of foreclosure proceedings, the homeowner/borrower corresponded with the servicer about a possible loan modification and was also notified that U.S. Bank Nat'l Ass'n was the lender seeking foreclosure. After entry of a judgment in favor of the lender, the homeowner/borrower objected to the failure to include the lender's name in the advance notice and asked the court to vacate the judgment. The trial court ordered the service of a revised notice, but declined to dismiss the foreclosure proceedings or vacate the judgment on the basis that the original notice had fulfilled the purpose of the Fair Foreclosure Act in advising the homeowner of the entity to contact for a possible loan modification.

On appeal, the New Jersey Supreme Court held that the New Jersey statute clearly required identification of the lender, in addition to the servicer, in the notice of intent to foreclose, and that the failure to do so rendered the notice defective. Provision of information concerning the servicer alone was not "substantial compliance" with the statute. 38 A.3d at 583. However, given that the homeowner/borrower had sufficient information to enter into loan modification negotiations and had been otherwise notified of the identity of the lender, the revised notice was sufficient to remedy that defect and there was no need to vacate the foreclosure judgment. *Id.* at 585. The Court rejected the homeowner's argument that the foreclosure proceeding should have been dismissed and restarted. The Court also explicitly disapproved a decision of the New Jersey intermediate appellate court that held that dismissal of a foreclosure action would ordinarily be the

appropriate remedy when a notice failed to identify the lender. *Id.* at 586–87.

In *Guillaume*, the defect in the notice of intent to foreclose was more readily apparent than in the instant case, as the New Jersey Fair Foreclosure Act itself defined "lender" and it was clear that the entity fitting that definition had been omitted from the notice of intent to foreclose. The case thus concerned the appropriate remedy, given that defect in the notice in light of the other information available to the homeowner/borrower. In Ms. Shepherd's case, the notice is arguably not defective in that it does identify one, though not all, secured parties, and RP § 7–105.1 is somewhat ambiguous on whether further disclosure was required. In any event, Ms. Shepherd had as much information, within the critical time frame, as the homeowner in *Guillaume* concerning the status of her mortgage, the possibility of seeking a loan modification, and the identity of the owner of her loan.

As the circuit court correctly observed, the statute that establishes the advance notice requirement does not prescribe a specific remedy for defects in a Notice of Intent to Foreclose.[18] Ms. Shepherd sought dismissal of the foreclosure action under Maryland Rule 14–207.1 which provides that a court "may" notify parties that it will dismiss a foreclosure action or issue some "other appropriate order" for non-compliance with statutes or rules governing foreclosure. That rule contemplates an opportunity for the foreclosing party to remedy the deficiency within 30 days. Maryland Rule 14–207.1(a). Like the New Jersey Supreme Court, we do not believe that the defect in the Notice of Intent to Foreclose requires dismissal of the foreclosure action in the circumstances of this case. Accordingly, we hold that the circuit court properly exercised its discretion to deny the motion to dismiss the

---

**18.** RP § 7–105 includes a statute of limitations for an "action for failure to comply with the provisions" of the statute, but does not specify a specific remedy for particular types of non-compliance. RP § 7–105.1(*o* ).

foreclosure action.[19]

## Conclusion

A foreclosing party should ordinarily identify, in the Notice of Intent to Foreclose, each entity that is a "secured party" with respect to the deed of trust to be foreclosed. However, a failure to disclose every secured party is not always a basis for dismissal of a foreclosure action. In this case, the notice identified a secured party and contained the other information required by RP § 7–105.1 that allowed Ms. Shepherd to pursue a loan modification if she desired to do so. Moreover, Freddie Mac's ownership of her loan was elsewhere disclosed to her well in advance of the foreclosure sale, and she did not move to dismiss the foreclosure action on the grounds of defective notice for more than a year after that disclosure. In these circumstances, the dismissal of the foreclosure action was not required.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY IS AFFIRMED. COSTS IN THIS COURT TO BE PAID BY APPELLANT.**

---

19. As noted earlier, Ms. Shepherd complains that the circuit court unconstitutionally relied on Maryland Rule 1–201(a) to override the notice requirements of RP § 7–105.1(c). However, the circuit court's reference to Rule 1–201 appears to have been to the basic principle— which applies to the interpretation of statutes as well as rules—that the failure to specify consequences of non-compliance in a statute or rule grants discretion to a court to determine the consequences in light of the particular facts and the purpose of the rule or statute. *Schaller v. Castle Development Corp.*, 347 Md. 90, 96, 698 A.2d 1106 (1997).