REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 242

September Term, 2013

RAMON GRANADOS

v.

SCOTT NADEL, ET AL.

Kehoe,
Arthur,
Leahy,

JJ.

Opinion by Leahy, J.

Filed: December 16, 2014

Foreclosures are a constant reminder of the not-so-distant financial crisis and the significantly more recent economic downturn known as the Great Recession. In an effort to stem the surge in foreclosures in Maryland, the General Assembly enacted laws obligating lenders to give borrowers information regarding opportunities to avoid foreclosure. This case interprets the legislatively prescribed notice requirements that lenders must send to borrowers before initiating a foreclosure action.

In 2009, Appellant, Ramos Granados, defaulted on a loan secured by his principal residence. Mr. Granados endeavored to participate in loan modification, but after he made a few late payments, the lender filed a notice of intent to foreclose ("Notice" or "NOI"). Shortly after filing a foreclosure action, the lender dismissed the case without prejudice. Almost one year after the NOI was issued, Jeffrey Nadel and Scott Nadel, as substitute trustees for the current noteholder ("Appellees," "Trustees," or "lender"),[1] filed a second foreclosure action. The Trustees did not send Mr. Granados a new NOI, relying instead on the NOI issued prior to the first foreclosure action, and prior to intervening changes in the statute governing notice requirements for residential foreclosures.

---

[1] A deed of trust allows the mortgage lender to assert certain rights, including the right to foreclose on the secured property and to appoint substitute trustees. As a term of common parlance, we use the term "lender" in this opinion to refer to the entity that can assert these rights. "Secured party" would also be an appropriate term, as "any person who has an interest in property secured by a lien or any assignee or successor in interest to that person." Md. Rule 14-202(s).

1

During the second foreclosure action Mr. Granados filed several motions to dismiss, followed by exceptions to the foreclosure sale, in which he asserted that the Trustees failed to comply with the notice requirements of Maryland Code (1974, 2010 Repl. Vol., 2010 Supp.), Real Property Article ("RP"), § 7-105.1[2] and Maryland Rule 14-205. The Circuit Court for Prince George's County denied the motions and ratified the sale. In his timely appeal, Mr. Granados raises two issues for our review, which we have rephrased for clarity:

1.    Did the circuit court err in denying Mr. Granados' motions to dismiss the foreclosure action where the Trustees docketed the action relying on a Notice of Intent to Foreclose issued prior to applicable changes to the statute governing notice requirements in a prior foreclosure action that was dismissed?

2.    Did the circuit court err in denying Mr. Granados' request for a hearing relative to his motion excepting to ratification of foreclosure sale pursuant to Maryland Rule 2-311?

We hold that once the Trustees dismissed the first foreclosure action, they were obligated to send Mr. Granados a new Notice containing the particularized information and documents prescribed by law before filing a second foreclosure action. Therefore, we reverse the circuit court on the first issue and do not reach the second.

---

[2]    Unless otherwise noted, all references to Real Property Article Section 7-105.1 refer to the 2010 Supplement, which includes changes to § 7-105.1 created by the Acts of 2010 that were in effect at the time the second foreclosure action was filed.

# I.

Ramon Granados obtained a construction loan on November 20, 2006, in an amount of $688,950 from FNMC, a division of National City Bank. The loan was evidenced by a note and secured by a deed of trust recorded against real property in the city of Bowie in Prince George's County, Maryland (the "Property" or the "Bowie Property"). Under the deed of trust, Mr. Granados was to use the Property as his principal residence within 60 days of obtaining the loan and for at least one year thereafter unless otherwise agreed by the parties in writing.

## First Modification Trial Plan

On December 31, 2008, PNC Bank, National Association ("PNC") acquired National City Bank and the Granados loan. Select Portfolio Servicing, Inc. ("SPS") was a loan servicer for PNC. A loan servicer performs services for the mortgage note holder or lender, including collecting payments, modifying terms of the mortgage, releasing liens, paying property insurance and taxes, and initiating foreclosure proceedings. *See* Md. Code (1980, 2011 Repl. Vol., 2014 Supp.), Fin. Inst. Art. § 11-601(j); *Deutsche Bank Nat. Trust Co. v. Brock*, 430 Md. 714, 727-31 (2013).

Mr. Granados defaulted on the loan on May 2, 2009.[3] On September 25, 2009, SPS sent Mr. Granados an application for his first Trial Period Plan under the Home

---

[3] The record does not reflect the outstanding balance of the loan at the time of default.

3

Affordable Modification Program ("HAMP").[4]  The Plan set up three payments each in

an amount of $1,730.64 due on November 1, 2009, December 1, 2009, and January 1,

2010.  If Mr. Granados complied with the terms of the Plan, under which "TIME WAS

OF THE ESSENCE,"[5] the lender would send him a HAMP Agreement to modify the loan

documents.  Although at the time Mr. Granados had not yet received a notice of intent to

foreclose, and no foreclosure action had been filed, the SPS application form also

contained a provision stating that the lender would suspend any scheduled foreclosure

sale if borrower met the obligations of the Plan.  Significantly, the form also advised, "but

---

[4]

      In response to the financial crisis, Congress enacted the Emergency Economic Stabilization Act, P.L. 110–343, 122 Stat. 3765 (2008), codified at 12 U.S.C. §§ 5201–5261. Under this legislation, the United States Department of Treasury created HAMP to help borrowers avoid foreclosure by incentivizing loan servicers to reduce monthly mortgage payments for struggling homeowners.  *See* 12 U.S.C. § 5219(a); *Miller v. Chase Home Fin., LLC*, 677 F.3d 1113, 1116 (11th Cir. 2012).  To be eligible for a HAMP loan modification, a borrower must meet the following requirements: The mortgage loan must be a first lien mortgage loan that was originated on or before January 1, 2009; the property must not be condemned; the borrower must have documented financial hardship and represented that he or she does not have sufficient liquid assets to make the monthly mortgage payments; the borrower must agree to set up an escrow account for taxes and insurance; and the current unpaid principal balance must not be greater than $729,750 for a single unit property. Treasury Department, *The Making Home Affordable Program Handbook for Servicers of Non-GSE Mortgages*, at 72-74 (2014), *available at* https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/ mhahandbook_44.pdf.

[5]

      "Time is of the essence" is a term of art in contract law requiring strict adherence to the time designated for performance.  When "time is of the essence" is included in a contract, time is such a material matter that strict compliance by performance within the specified periods of time is a prerequisite to the right to require performance by the other party.  *See Elderkin v. Carroll*, 403 Md. 343, 358 (2008); 5A Maryland Law Encyclopedia, Contracts § 148, pp. 430-31 (2013-2014 Supp.).

4

any foreclosure action *will not be dismissed* and may be immediately resumed from the point at which it was suspended if this Plan terminates." (Emphasis added).

Thus conditioned on the premise that any pending foreclosure action would not be dismissed, the form advised that no new "notice of default, notice of intent to accelerate, notice of acceleration, or similar notice will be necessary to continue the foreclosure action, all rights to such notices being hereby waived to *the extent permitted by applicable law*." (Emphasis added).

Mr. Granados made payments in the correct amounts on November 24, 2009 (23 days late), December 28, 2009 (27 days late), and January 23, 2010 (22 days late). Mr. Granados made a fourth payment on February 26, 2010. On March 5, 2010, Mr. Granados received a letter from SPS, Inc. stating that SPS did not apply a check it received in an amount of $1,730.64, because "[the funds] were less than the amount that we previously advised you was necessary to stop your foreclosure." The letter did not explain why SPS considered the payment to be an incorrect amount or why it accepted three late payments but not this one. The letter advised Mr. Granados that, "if you send us *$60,422.42* by *03/19/2010* we will credit the payment to your account, stop your foreclosure and set you up on a forbearance plan to accept future payments." (Emphasis added).

**The Notice of Intent to Foreclose**

On March 10, 2010, a Notice of Intent to Foreclose was sent to Mr. Granados

5

pursuant to Maryland Code (1973, 2003 Repl. Vol., 2008 Supp.), RP § 7-105.1(b)(1), and Code of Maryland Regulations ("COMAR") 09.03.12.02. The NOI announced that Mr. Granados was in default of his Loan as of May 2, 2009, and that the most recent loan payment, received on January 11, 2010,[6] was applied to the April 4, 2009 period. The NOI specified the new amount required to cure the default was *$66,159.75*. It also warned that, "[if] you do not bring your loan current and cure your default or negotiate a resolution with us, we may file a foreclosure action 45 days after this Notice is sent."

**First Foreclosure Action**

On April 8, 2010, SPS sent Mr. Granados a second trial period plan. The second plan required trial period payments of $2,133.64 by May 1, June 1, and July 1, 2010. Mr. Granados made a single payment of $2,133.64 on April 30, 2010, but that same day¯ one day *before* the first payment was due under the second plan¯ Bierman Geesing & Ward LLC, on behalf of the substitute trustees on the deed of trust at the time, filed the first foreclosure action. Bierman Geesing & Ward LLC later voluntarily dismissed this action without prejudice through an order entered by the circuit court on July 19, 2010. *Geesing*

---

[6]   The Trial Plan provided that the "Lender will hold the payments received during the Trial Period in a non-interest bearing account until they total an amount that is enough to pay [the] oldest delinquent monthly payment on [the] loan in full." The Deed of Trust states that "Lender may accept any payment or partial payment insufficient to bring the Loan current . . . but Lender is not obligated to apply such payments at the time [they] are accepted." The record is not clear, but it appears that on January 11, 2010, Mr. Granados' first two payments under the Trial Plan were applied to his most delinquent loan period, from May 2009, and the other payments  were held until Mr. Granados could make his loan current or until foreclosure.

6

*v. Granados*, No. CAE10-13975, Circuit Court for Prince George's County.

Meanwhile, on May 10, 2010, Mr. Granados received yet another letter from SPS stating that SPS did not apply the check it received from him in an amount of $2,133.64. True to form, the letter provided the same reason for not crediting Mr. Granados' check as in the previous letter: "[the funds] were less than the amount that we previously advised you was necessary to stop your foreclosure."

The Granados Loan was transferred in August 2010 to Wells Fargo Bank, N.A., Trustee to RMAC Pass-Through Trust, Series 2010-7T ("Wells Fargo"). Quantum Servicing Corporation ("Quantum") assumed responsibility for servicing the Loan.[7] SPS sent Mr. Granados a letter dated September 13, 2010, notifying him that servicing of the Loan was being transferred to Quantum and that the last date to contact or make payments to SPS was September 29, 2010. The letter explained that after September 29, 2010, all future questions about the loan should be directed to Quantum.

## The General Assembly Acts to Aid Distressed Homeowners

The General Assembly first addressed the foreclosure crisis in 2008 with the passage of Senate Bill 216 and House Bill 365, both signed by Governor O'Malley and

---

[7] In their Order to Docket filed February 24, 2011, the Trustees attached an affidavit of ownership of the loan by Wells Fargo. On January 18, 2011, the Vice-President of Wells Fargo N.A. executed a document giving Quantum Limited Power of Attorney. The record does not demonstrate whether anyone sent Mr. Granados notice of the transfer of the loan to Wells Fargo as required under the Truth In Lending Act. *See* 15 U.S.C. § 1641(g) (requiring the new owner of a loan to notify the borrower in writing of the mortgage loan is sold or transferred within 30 days of transfer).

7

enacted as Chapters 1 and 2, Laws of Maryland 2008. This emergency legislation was prompted by the Maryland Homeownership Preservation Task Force, convened by Governor O'Malley in 2007, in response to rising loan default and foreclosure rates in Maryland. The legislation created RP § 7-105.1, which provides that a foreclosure action generally may not be filed against a residential property until at least 90 days after the borrower defaults on the loan and 45 days after the lender sends the borrower a notice of intent to foreclose. Maryland Code (1973, 2003 Repl. Vol., 2008 Supp.), RP § 7-105.1(b)(1). The purpose of the legislation was to aid borrowers in communicating with lenders to avoid foreclosure. In that vein, the notice was required to state the names and telephone numbers of the secured party, the loan servicer, and an agent of the secured party authorized to modify the terms of the mortgage loan. Maryland Code (1973, 2003 Repl. Vol., 2008 Supp.), RP § 7-105.1(c).[8]

In 2010, during the time Mr. Granados was attempting to enter into a HAMP agreement to modify his loan, the General Assembly once again addressed the persistent rise in foreclosure actions in Maryland. After passage of the 2008 legislation, foreclosures continued to escalate, with total foreclosure activity increasing 67% over one

---

[8] The Maryland Judiciary also acted to address the impact of the foreclosure crisis. The Judiciary partnered with the Governor, Attorney General, the Maryland State Bar Association, the Maryland State Department of Labor and Licensing and Regulations ("DLLR"), Civil Justice Inc., and other legal services groups to create the Foreclosure Prevention Pro Bono Project to help manage the pro bono attorneys who provided homeowners with legal services to help them with their distressed properties. *See* Eveleth, *Foreclosure Crisis: Maryland Lawyers Take Action*, Md. Bar J., Jan. 2009.

year⁻ from 29,790 foreclosures in 2008 to 44,463 in 2009⁻ and rising 13% in the last quarter of 2009. *See* Department of Legislative Services, *Fiscal and Policy Note for House Bill 472, Revised*, at 7-8, 15 (2010). House Bill 472, passed on April 7, 2010, substantially modified the content of the notice of intent to foreclose that lenders are required to provide borrowers prior to filing an order to docket foreclosure. *See* House Bill 472, ch. 485 (2010).[9]

The legislation required, among other things, that lenders provide borrowers notice of loan modification programs well before initiating a foreclosure action. Specifically, amended RP § 7-105.1(c) requires lenders to send the borrower and record owner of an owner-occupied residential property an application for a loan modification or loss mitigation program along with any NOI, at least 45 days before filing a foreclosure action. This provision addresses a problem noted in the preamble to the bill as originally filed, which acknowledged that "[m]any homeowners have their home go to foreclosure while loan modification reviews are still pending or have not even begun." House Bill 472, ch. 485, 2:15-16 (first reading, 2010). Thus, the new law requires that loss mitigation applications have to include: options for loan modification or alternative loan payment plans; ways to simplify relinquishment of the property, such as through short sale or deed in lieu of foreclosure; and ways to lessen the harmful impact of foreclosure

---

[9]

The bill modified Maryland Code (2010 Repl. Vol., 2010 Supp.), RP § 7-105.1, and Maryland Code (2006 Repl. Vol., 2010 Supp.), Housing and Community Development Article ("HCD"), § 4-507.

on the borrower. The new law also expands mediation opportunities for borrowers and requires lenders to perform a loss mitigation analysis. *See* RP § 7-105.1(c)(5), (g) (2010 Repl. Vol., 2010 Supp.). A loss mitigation analysis is an evaluation of the facts and circumstances of a loan secured by owner-occupied residential property to determine whether a mortgagor or grantor qualifies for a loan modification, and, if there will be no loan modification, whether any other loss mitigation program may be made available to the mortgagor or grantor. RP § 7-105.1(a)(6).

The new law also amended the content of the NOI that lenders were required to send borrowers to include the following:

> 4. A statement recommending that the mortgagor or grantor seek housing counseling services;
> 5. The telephone number and the Internet address of nonprofit and government resources available to assist mortgagors and grantors facing foreclosure, as identified by the Commissioner of Financial Regulation;
> 6. An explanation of the Maryland foreclosure process and time line, as prescribed by the Commissioner of Financial Regulation.

RP § 7-105.1(c)(4)(ii)(1)-(3) (2010 Repl. Vol., 2010 Supp.).

**Second Foreclosure Action**

On February 24, 2011, the Trustees filed an Order to Docket Suit in the Circuit Court for Prince George's County, initiating the second foreclosure proceeding under the deed of trust against the property at 13920 Lake Meadows Dr. The Order to Docket included: 1) an Affidavit of Ownership identifying the secured party as Wells Fargo; 2) an Affidavit of Debt made by Quantum on behalf of Wells Fargo indicating that the amount due on the loan by Mr. Granados was $791,594.55; 3) an Affidavit of Default specifying that the Loan was due for the May 1, 2009 payment, and that as of January 25, 2011, the loan was more than 634 days past due; 4) copies of the Note, Deed of Trust, Deed of Removal, Appointment of Successor Trustee, and other documents required by the Commissioner of Financial Regulation; 5) information concerning loss mitigation

10

programs and eligibility requirements; 6) a "Hardship Packet" to be completed by Mr. Granados in advance of any mediation; and 7) a copy of the March 10, 2010 Notice.

On March 23, 2011, Mr. Granados moved to dismiss the foreclosure proceeding pursuant to Maryland Rule 14-211[10] on several grounds. First, he asserted that the lender did not comply with the loan modification trial plans and never returned the February 26, 2010 payment he made under the second plan, although he did not provide documentation to support this claim. Second, Mr. Granados contended that the Order to Docket filed February 24, 2011 did not comply with the new Maryland Rule 14-205(b), which, by its terms, required that a notice of intent to foreclose comply with the revised notice requirements under RP § 7-105.1(c) (2010 Repl. Vol., 2010 Supp.). Specifically, Mr. Granados alleged that the NOI, issued almost a year prior to the second foreclosure action, did not contain the correct information and documents the law required be sent with the NOI. He stated that the Trustees were "trying to circumvent the new regulations by attaching to their order to docket an inaccurate and outdated [NOI] that does not include the correct amount required to cure the default and that names PNC Bank as the secured party, when in fact, it is now Wells Fargo the alleged secured party."

The Trustees responded that the foreclosure was docketed using a notice of intent that complied with the law at the time the NOI was issued. They maintained that the circuit court should read the new statutory provisions prospectively to permit NOIs issued before the new law went into effect to serve as sufficient notice prior to filing an order to docket foreclosure. The Trustees cited an advisory notice issued by the Maryland Commissioner of Financial Regulation purporting to grandfather NOIs that were compliant with the provisions of RP § 7-105.1 in effect prior to July 1, 2010. They asserted that because Mr. Granados did not cure his default, the NOI was still valid, and the dismissal of the previous foreclosure action was immaterial.

The circuit court denied Mr. Granados' motion in an order entered on April 11, 2011 without a memorandum opinion. Soon after, on April 18, 2011, Mr. Granados requested mediation, which the parties held on May 23, 2011.[11] On May 27, 2011, the mediator filed a mediation report with the circuit court, stating that no agreement was reached.

On June 7, 2011, Mr. Granados filed a second motion to dismiss, relying on substantially the same arguments as in his first motion, and adding a paragraph challenging the Trustees' power of attorney to initiate the foreclosure on behalf of Wells

---

[10] Maryland Rule 14-211 allows borrowers with a legitimate defense to a foreclosure an opportunity to raise the defense, and if proven, stay and dismiss the foreclosure action.

[11] In the intervening time, Mr. Granados filed an appeal to this Court on May 9, 2011, which he voluntarily dismissed four days later (entered on May 31, 2011) in order to participate in mediation with the Trustees.

Fargo. In opposition, the Trustees produced a document showing power of attorney. The circuit court again rejected Mr. Granados' arguments and ruled that, "simply because a prior foreclosure case was voluntarily dismissed, a previously issued Notice of Intent is not therefore invalid." The court noted that Mr. Granados had raised this very same issue in his previous motion and had "not offered any new legal basis for the granting of the requested relief."

On August 15, 2011, Mr. Granados filed a motion for reconsideration, "respectfully disagree[ing] with [the circuit court's] interpretation" of the law in the July 15, 2011 opinion denying his second motion to dismiss. In this motion, Mr. Granados further developed his argument that the Trustees could not rely on the NOI issued before the previous foreclosure action because it was out-of-date and did not comply with current law. Mr. Granados asserted that the Maryland Commissioner of Financial Regulation intended his Advisory Notice to allow secured parties to use NOIs from before the law's effective date for a reasonable amount of time, but not NOIs issued by different secured parties for different foreclosure proceedings.[12]

**Chapter 7 Bankruptcy and Denial of Motion to Reconsider**

Before the circuit court could rule on Mr. Granados' motion for reconsideration, Mr. Granados filed for Chapter 7 Bankruptcy in United States Bankruptcy Court for the District of Maryland on August 16, 2011. The bankruptcy court stayed the Maryland circuit court proceeding on August 22, 2011, and then lifted the stay on October 18, 2011. *See* 11 U.S.C. § 362(d). On December 2, 2011, the bankruptcy judge discharged Mr. Granados from his debts, including the amount owed to Appellees for the loan.

The foreclosure proceeding resumed, and the Trustees filed an opposition to Mr. Granados' motion to reconsider on February 22, 2012. Mr. Granados filed a reply on March 6, 2012, this time asserting that he had met his obligations under the Second Trial Plan, but that the lender did not uphold the terms of the plan, which entitled him to a modification. He provided documentation of the trial plans that SPS offered and his payments thereunder. The circuit court denied Mr. Granados' motion for reconsideration in an order entered on March 26, 2012, again stating that he failed to offer any new legal basis for relief. On April 11, 2012, Mr. Granados filed an appeal of the order to this Court, which he withdrew on June 21, 2012 and which was dismissed on the same day.

**Foreclosure Sale**

The Trustees proceeded with the foreclosure sale on November 16, 2012, and sold

---

[12]

Neither Mr. Granados nor the Trustees supplemented the record below with a subsequent advisory notice issued by the Commissioner on October 25, 2011, and therefore, the circuit court could not have discerned the full intent of the Commissioner of Financial Regulation. The updated notice stated that his previous notice was intended to address transitional issues related to the new NOI requirements and was not intended to provide that an NOI was perpetually valid. *See infra* page 24.

the Property to Wells Fargo, the note holder, for $315,783.29.  On January 18, 2013, in one last attempt to avert the loss of his property, Mr. Granados filed a Motion Excepting to Ratification of Foreclosure.  The circuit court issued an order entered on March 1, 2013, denying the motion and ratifying the foreclosure sale.  On March 28, 2013, Mr. Granados noticed the instant appeal from the order ratifying the sale pursuant to Maryland Code (1973, 2013 Repl. Vol., 2013 Supp.), Courts & Judicial Proceedings Article ("CJP"), § 12-303, which allows appeals from an order for the sale or conveyance of real property.  The circuit court proceeded to grant judgment in favor of the Trustees in an order dated May 1, 2013.

On appeal and in his motions to dismiss filed below, Mr. Granados contends that when the second foreclosure suit was brought almost a year after the NOI was sent, the information contained in the NOI was stale and inaccurate, and did not comply with additional notice requirements established by subsequent amendments to RP § 7-105.1 and COMAR 09.03.12.02.  He maintains that because the Trustees failed to send him a new Notice, the foreclosure action should have been dismissed.[13]  The Trustees, on the other hand, claim that the NOI was complaint with RP § 7-105.1 when it was sent, and amendments to the statute effective July 1, 2010 were intended to apply prospectively to NOIs issued after July 1, 2010.  Therefore, the NOI that was sent to Mr. Granados in March of 2010 prior to the first foreclosure proceeding was valid for the subsequent foreclosure proceeding filed in February of 2011.  For support, the Trustees cite to the May 2010 Advisory Notice issued by the Commissioner of Financial Regulation stating that NOIs sent before July 1, 2010 may be used for foreclosure actions in the transitional period after the law took effect.

**II.**

---

[13]

We note that Appellant timely filed his motions to dismiss the foreclosure pursuant to Maryland Rule 14-211, which provides that "a motion by a borrower to stay the sale and dismiss the action shall be filed no later than 15 days after the last to occur of: (i) the date the final loss mitigation affidavit is filed; . . . [or] the date the postfile mediation was held."  Here, Appellant filed his first motion to dismiss on March 23, 2011.  The circuit court denied that motion on April 11, 2011.  Postfile mediation was held on May 23, 2011, and Appellant filed his second motion to dismiss on June 7, 2011, satisfying the fifteen-day requirement of Rule 14-211.  Appellate review of a circuit court's denial of a motion to dismiss a foreclosure is proper when a party appeals after the denial of exceptions to a sale.  *See Svrcek v. Rosenberg*, 203 Md. App. 705, 720 (considering the pre-sale denial of motions to dismiss the foreclosure proceeding appealed after post-sale ratification by the circuit court), *cert. denied,* 427 Md. 610 (2012).

**Standing**

The Trustees, in one footnote and one sentence in the body of their brief, contest Mr. Granados' standing to bring this appeal because of his Chapter 7 bankruptcy. They assert that, due to Mr. Granados' discharge, any claim or cause of action belongs to the bankruptcy estate unless the estate administered it or abandoned it. At oral argument, the Trustees narrowed their standing argument to challenge only Appellant's ability to pursue a loan modification claim, not to dispute the procedural issues with the notice of intent to foreclose.

Before the circuit court, the Trustees' prose was much less explicit.[14] They noted that Mr. Granados had received a discharge under Chapter 7, and that he was relieved of any obligation to pay the lender. The Trustees relied on Mr. Granados' discharge to characterize his motions as dilatory tactics to forestall the foreclosure, but they did not contest his standing to file the motion or exceptions to sale. Given the Trustees' cursory treatment of this issue, before the circuit court, in their brief here, and at oral argument, we are hesitant to say they preserved this issue for appeal. Therefore, we decline to decide standing for the first time on appeal.

"Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court . . . ." Md. Rule

---

[14] In their Opposition to Defendant's Motion to Reconsider, the Trustees asserted:

Lastly, it must be duly noted that the defendant has filed for protection under the U.S. Bankruptcy Code and has received a discharge in his Chapter 7 case (see Exhibit D). As such, the defendant is discharged from any further liability for the underlying debt in this matter. While it is true that the secured party may still pursue its remedy as against the secured property, the debtor himself is now relieved of any obligation to pay the lender under the terms of Promissory Note/debt instrument. This being the case, it becomes rather apparent as well as transparent, that the defendant has, and continues to interpose all of his arguments and defenses, merely as dilatory tactics to forestall the lender from foreclosing on the subject property, which is the sole remaining remedy the secured party has since the defendant's discharge in Bankruptcy. This being the case, such dilatory tactics must come to an end by this Court denying the Motion to Reconsider.

The Trustees included almost identical language in their Opposition to Defendant's Motion Excepting to Ratification of Foreclosure.

15

8-131. This is true for issues of standing; when a party raises the issue of standing on appeal, this Court need not decide the issue if it was not raised and decided by the circuit court. *Cnty. Council of Prince George's Cnty. v. Zimmer Dev. Co.*, 217 Md. App. 310, 319 (quoting *Garner v. Archers Glen Partners, Inc.*, 405 Md. 43, 53 (2008)), *cert. granted sub nom. Prince George's Cnty. v. Zimmer Dev. Corp.*, 440 Md. 114 (2014). The appellate court is not an advocate tasked with searching for each party's winning argument. Rather, the appellate court is limited ordinarily to issues preserved by the parties. *Fraternal Order of Police, Montgomery Cnty., Lodge 35 v. Montgomery Cnty.*, 437 Md. 618, 630 (2014) (quoting Frank M. Coffin, *The Ways of a Judge: Reflections from the Federal Appellate Bench* 52 (Houghton Mifflin 1980)) ("Deciding an appeal is not a matter of approaching the problem as if for the first time. It is determining whether another, earlier, carefully structured decision should be upheld.")); *see also Troxel v. Iguana Cantina, LLC*, 201 Md. App. 476, 511 (2011) (declining to address an issue when the trial court neither ruled on it, nor based any portion of its decision, oral or written, on it).

We do not decide whether the Trustee in Bankruptcy or Mr. Granados has an ownership interest in the Property, but only that the foreclosure did not comply with applicable Maryland law. This appeal is from the circuit court's ratification of the foreclosure sale and denial of Mr. Granados' exceptions to that sale. Maryland Rule 14-305 allows a party to the foreclosure proceeding to file exceptions to the sale. *See Four*

16

*Star Enters. Ltd. P'ship v. Council of Unit Owners of Carousel Ctr. Condo., Inc.*, 132 Md. App. 551, 569 (2000) (implying that a record owner and party would have standing to file exceptions). Here, the Trustees do not contest that Mr. Granados was a party to the foreclosure proceeding and did not try to remove or disqualify him. In the Report of Sale for the foreclosure, dated November 16, 2012, the Trustees rested their authority to proceed with the foreclosure on the "Deed of Trust from Ramon Granados." The Trustees continued to acknowledge Mr. Granados' role as a party in the foreclosure case during the pendency of the bankruptcy proceeding, and thus even though Mr. Granados received a discharge from the bankruptcy court, he was still a party to the Maryland foreclosure suit, and filed exceptions under Rule 14-305.[15]

### III.

Although we review the circuit court's denial of a foreclosure injunction for an abuse of discretion, *Anderson v. Burson,* 424 Md. 232, 243 (2011), to the extent this case involves interpretation and application of amendments to Section 7-105.1 of the Real Property Article, we review the trial court's legal conclusions *de novo. Burson v. Capps*, ___ Md. ___, ___, No. 2, Sept. Term 2014, slip op. at 12-13 (Oct. 23, 2014),

---

[15] The bankruptcy court lifted its stay on the foreclosure proceeding on October 18, 2011. In that order, the court allowed the foreclosure, allowed the recordation of a Trustees Deed from the foreclosure, and allowed the successful purchaser to proceed to evict the debtor and "to take whatever legal action is necessary to obtain possession of the above mentioned property pursuant to Maryland law." It further provided that "any surplus that may arise from the foreclosure sale shall be paid to the Chapter 7 Trustee for distribution."

*reconsideration denied*, (Nov. 19, 2014); *Wincopia Farm, LP v. Goozman*, 188 Md. App. 519, 528 (2009).[16] The goal of statutory construction is to discern and carry out the intent of the legislature. *Blue v. Prince George's Cnty.*, 434 Md. 681, 689 (2013). This requires a contextual examination of the statutory text, a review of legislative history to confirm conclusions or resolve questions from that examination, and a consideration of the consequences of alternative readings. *Id.* "Text is the plain language of the relevant provision, typically given its ordinary meaning, viewed in context, considered in light of the whole statute, and generally evaluated for ambiguity." *Id.* (quoting *Town of Oxford v. Koste*, 204 Md. App. 578, 585-86 (2012), *aff'd,* 431 Md. 14 (2013)) (internal quotation marks omitted). Legislative purpose, either apparent from the text or gathered from external sources, often informs, if not controls, our reading of the statute. *Id.* With this in mind, we review the Maryland statute governing notices of intent to foreclose.

---

[16] The parties refer to Maryland Rule 14-205 in their discussions of the requirements for foreclosure filings. Maryland Rule 14-205(b) refers to and reproduces parts of RP § 7-105.1 relevant to this appeal, specifically, the requirement that a lender issue an NOI at least 45 days before filing an order to docket the foreclosure. We therefore reference the Maryland Code, RP § 7-105.1 throughout this discussion rather than the Maryland Rules. We nevertheless note that the Maryland Rules are consistent with our discussion of the history and purpose of the recent foreclosure legislation. Since the beginning of the recent foreclosure problems, and especially after the passage of these recent statutes, the Court of Appeals has amended the rules to ensure that they are compatible with the newly enacted foreclosure statutes. *Maddox v. Cohn*, 424 Md. 379, 387 (2012). Both the legislative acts and the amendments to the Rules were designed primarily to protect the interests of residential homeowners in the foreclosure process. *Id.* at 388. In consideration of the General Assembly's public policy statements, as exemplified by its recent enactments, strict adherence to the rules of procedure in mortgage foreclosure sales of residential property and their consequent protections for borrowers is required. *Id.* at 393.

18

**Real Property Article § 7-105.1**

Upon the recommendation of the Maryland Homeownership Preservation Task Force, the General Assembly added Section 7-105.1 in 2008 to alert distressed homeowners to a pending foreclosure action and "afford homeowners adequate time to mitigate their loss or present defenses to the foreclosure action." *Shepherd v. Burson*, 427 Md. 541, 544-46 (2012) (quoting *Maryland Homeownership Preservation Task Force Report*, at 36 (November 29, 2007)) (internal quotation marks omitted). In other words, the purpose of RP § 7-105.1 is to provide some advance warning of the foreclosure proceedings to the defaulting borrower, the identification of the secured party, and other specified information to allow the borrower to pursue a modification of the loan or other action to forestall foreclosure. *Id.* at 557. Before a lender may foreclose on a defaulting borrower, the lender must give a borrower notice of its intent to foreclose upon the secured property. Pursuant to Real Property Article § 7-105.1(b)(1), with exceptions not relevant here, "an action to foreclose a mortgage or deed of trust on residential property may not be filed until the later of: (i) 90 days after a default in a condition on which the mortgage or deed of trust provides that a sale may be made; or (ii) 45 days after the notice of intent to foreclose required under subsection (c) of this section is sent." [17]

---

[17]     Maryland Rule 14-205(b) duplicates the notice requirement, stating, with an exception not relevant here, that "an action to foreclose a lien on residential property may not be filed until the later of (1) 90 days after a default for which the lien instrument lawfully allows a sale, or (2) 45 days after the notice of intent to foreclose required by Code, Real Property Article, § 7-105.1(c), together with all items required by that section to accompany the notice, has been sent in the manner required by that section."

At the time the NOI was issued in this case, the NOI was required to contain the following information:

> 1. The name and telephone number of:
>     A.   The secured party;
>     B.   The mortgage servicer, if applicable; and
>     C.   An agent of the secured party who is authorized to modify the terms of the mortgage loan;
> 2. The name and license number of the Maryland mortgage lender and mortgage originator, if applicable;
> 3. The amount required to cure the default and reinstate the loan, including all past due payments, penalties, and fees;
> 4. Any other information that the Commissioner of Financial Regulation requires by regulation.

RP § 7-105.1(c) (2003 Rep. Vol., 2008 Supp.).

As discussed *supra*, during the 2010 legislative session, the General Assembly substantially changed the content that lenders were required to provide borrowers when sending a notice of intent to foreclose. *See* House Bill 472, ch. 485 (2010). For example, a Notice issued after July 1, 2010 must include the telephone numbers and internet addresses for government and nonprofit resources and a statement recommending housing counseling services. The General Assembly also mandated expanded mediation opportunities for borrowers. *See* RP § 7-105.1(c)(5).[18]

---

[18] The 2010 amendment to Section 7-105.1(c) added subsection (5), requiring the notice of intent to be accompanied by:

(i) A loss mitigation application:

> 1. For loss mitigation programs that are applicable to the loan secured by the mortgage or deed of trust that is the subject of the foreclosure action; or
> 2. If the secured party does not have its own loss mitigation application, in the form prescribed by the Commissioner of Financial Regulation;

20

The General Assembly intended the new law to be applied prospectively, and stated that it "may not be applied or interpreted to have any effect on or application to any order to docket or complaint to foreclose on residential property filed before the effective date [July 1, 2010] of this Act." House Bill 472, ch. 485, § 8 (2010). The legislation does not specify whether it was intended to apply prospectively to NOIs. The Commissioner of Financial Regulation addressed the issue in an advisory notice on May 5, 2010:

> A NOI sent by a secured party to a mortgagor or grantor and record owner of a residential property prior to the Effective Date [July 1, 2010], which is compliant with current law, may be filed with an order to docket on or after the Effective Date. HB 472 is explicitly prospective in its application. Section 8 of the bill provides that it "shall be construed to apply only prospectively and may not be applied or interpreted to have any effect on or application to any order to docket or complaint to foreclose on residential property filed before the effective date of this Act." *Given the prospective nature of HB 472, a NOI that is compliant with the law at the time it was sent is legally sufficient for purposes of being attached to an order to docket or complaint to foreclose on or after the Effective Date.*

Commissioner of Financial Regulation, "*Interim Guidance on Implementation of House*

---

(ii) Instructions for completing the loss mitigation application and a telephone number to call to confirm receipt of the application;
(iii) A description of the eligibility requirements for the loss mitigation programs offered by the secured party that may be applicable to the loan secured by the mortgage or deed of trust that is the subject of the foreclosure action;
(iv) An envelope addressed to the person responsible for conducting loss mitigation analysis on behalf of the secured party for the loan secured by the mortgage or deed of trust that is the subject of the foreclosure action.

(2010 Repl. Vol., 2010 Supp.).

*Bill 472 Compliance Relating to Notice of Intent to Foreclose*," Advisory Notice, May 5, 2010 (emphasis in original) (footnote omitted). On October 25, 2011, however, the Commissioner revised the May 2010 Notice, citing critiques "that complaints and orders to docket have been filed with NOIs that were delivered more than a year ago, in some instances, two years ago." Commissioner of Financial Regulation, "*Residential Mortgage Foreclosure Regulations - Notice of Intent to Foreclose, Loss Mitigation Affidavit and Related Documents*," Advisory Notice, Oct. 25, 2011. The 2011 Notice instructed:

> The 2010 Advisory *was intended to address transition issues* in connection with legislative changes and maintain the orderly processing of residential foreclosures in Maryland. The 2010 Advisory was not intended to provide that an NOI delivered on or before July 1, 2010 is perpetually valid. The Commissioner cannot determine the time at which an NOI should be reissued and *defers to the Maryland Judiciary to make such determinations on a case-by-case basis.*

(Emphasis supplied). Based on our reading of the amendments to RP § 7-105.1(c) and the intent of the law as interpreted by the Commissioner of Financial Regulation, we hold that, under the circumstances of this case, the Trustees were required to issue a new and updated NOI between the dismissal of the first foreclosure proceeding and the institution of the second that contained all of the information required by Section 7-105.1. We reject the Trustees' position that the NOI sent to Appellant in March of 2010 and used in the first foreclosure proceeding, which was dismissed, could be used as valid notice for any subsequent foreclosure proceeding. As demonstrated by the legislative history of RP § 7-105.1, the amendments apply to "any order to docket or complaint to foreclose on

22

residential property filed" after July 1, 2010. The Trustees filed their Order to Docket on February 24, 2011, almost a year after the NOI was sent. As discussed by the Commissioner in the 2011 Advisory Notice, the intent of 2010 amendments was to grandfather existing Notices during the transitional period surrounding the July 1, 2010 effective date of the new law. The 2010 Advisory Notice was not meant to confer perpetual validity to Notices issued before the new law went into effect. The Commissioner's directive on the interpretation of the statute is "entitled to some deference, given the specific legislative delegation to that official to adopt regulations with respect to the notice requirement." *Burson*, 427 Md. at 553 (citing *Sec'y Dep't of Pub. Safety & Corr. Servs. v. Demby*, 390 Md. 580, 604-05 (2006).

We decline to set an expiration date for a notice of intent to foreclose. However, when a lender institutes a foreclosure action, and then dismisses that action, the lender should issue a new NOI. Especially here, where the dismissal of the first foreclosure action coincided with legislative changes providing new protections to borrowers, the NOI issued in 2010 was clearly no longer sufficient. The NOI is not a blank check that will allow a lender to initiate a foreclosure proceeding against a borrower at any point in the future. It has a specific function⁻ to give borrowers notice of a potential foreclosure and allow them to pursue remediation of their default. It is contrary to the spirit of the law that the NOI should operate as a document providing notice to a borrower of an impending foreclosure by an uncertain lender at some unpredictable time in the future.

23

Appellees assert that, even if they should have issued a new NOI, the order to docket was a valid substitute because it allowed Appellant to receive all the information he would have received from an updated NOI. We disagree. Following Appellees' argument would obviate the requirement for the NOI. Its purpose is to give borrowers an opportunity for loan modification and communication with the current lender before the initiation of the foreclosure action, that is, before a trustee files an order to docket.

**Trustees' Failure to Provide Notice Was Not Harmless Error**

Having found that the circuit court erred by not requiring Appellees to issue a new NOI before filing an order to docket, we turn to whether that error warrants reversal in this appeal. Appellees assert that this case does not require reversal because Appellant was aware of his loan modification options, citing *Shepherd v. Burson*, *supra*, a Court of Appeals case interpreting RP § 7-105.1 as codified in 2008.[19] In that case, Ms. Shepard contested a foreclosure action, contending "that the failure to identify Freddie Mac as the secured party in the notice [of intent to foreclose] violated RP § 7-105.1(c)(4)(ii)(1)(A)," and that this violation warranted dismissal of the foreclosure action pursuant to Maryland

---

[19] Trustees also cite *Bachrach v. Washington United Co-op.*, 181 Md. 315, 320 (1943), and *Hurlock Food Processors, Inv. Assocs. v. Mercantile-Safe Deposit & Trust Co.*, 98 Md. App. 314, 329 (1993), for the proposition that appellate courts do not reverse foreclosure sales for "harmless errors or irregularities . . . or for any slight or frivolous reasons not affecting the substantial rights of the parties." These cases, however, are inapposite because here we have more than a "harmless irregularity." Moreover, the Trustees omit that these cases concerned "harmless errors or irregularities *committed in connection with the exercise of the power of sale*." *Bachrach*, 181 Md. at 320 (emphasis added). The issue here relates to the original notice of intent to foreclose, not to irregularities or errors in the sale.

Rule 14-207.1. *Shepherd*, 427 Md. at 549. The circuit court disagreed, allowed the sale to proceed, and ratified the foreclosure. *Id.* at 549-550. The Court of Appeals granted Ms. Shepard's petition for certiorari on direct appeal to consider whether the Notice of Intent to Foreclose that she received met the requisites of RP § 7-105(c) that the "secured party" be identified. *Id*. at 546. The Court held that the NOI was incomplete because it failed to identify one of the secured lenders. *Id.* at 556. However, the Court did not reverse the circuit court. The Court found that the NOI effectuated the purpose of RP § 7-105.1 because the notice contained "details to allow her to seek a loan modification, including the name and phone number of a specific individual." *Id.* at 557. The Court held:

> [A] failure to disclose every secured party is not a basis for dismissing a foreclosure action when the notice identifies a secured party, the notice contains the other information required by the statute that allows the borrower to pursue a loan modification, the identity of the other secured party is elsewhere disclosed to the borrower well in advance of the foreclosure sale, and the borrower does not move to dismiss the foreclosure action on the grounds of defective notice for more than a year after such disclosure.

*Id.* at 544.

The case before us presents a different factual situation from the one in *Shepherd*. Here, the NOI fulfilled its purpose for the *original* foreclosure action because it gave notice to Mr. Granados that foreclosure proceedings were imminent and gave contact information for the loan servicer. However, the NOI did not fulfill its purpose for the *second* foreclosure proceeding, which is the proceeding at issue here. By the time the

Trustees filed their order to docket in the second foreclosure action, the NOI was not just incomplete, it was also inaccurate. It did not name the current secured party or the loan servicer, nor did it contain contact information for someone authorized to perform loan modification as of the time the order to docket was filed. Because the Notice here was incorrect, not just incomplete as was the case in *Shepherd*, the error warrants vacating the sale and remanding to the circuit court for dismissal without prejudice. The Trustees, of course, can send a new notice of intent to foreclose, file their order to docket 45 days later, and complete the foreclosure sale in the new proceeding.[20]

In his second question presented, Mr. Granados asks us to consider the circuit court's denial of a hearing on his exceptions to the sale. Because we reverse the circuit court on the first question, we need not consider this issue.

---

[20] Reversing the sale and dismissing the case are appropriate actions here, as in other foreclosure cases, where there has been a defect in the foreclosure proceedings. *See, e.g.*, *Maddox*, 424 Md. at 400 (reversing circuit court decision ratifying the sale and remanding the case for a resale of the premises); *Julian v. Buonassissi*, 414 Md. 641, 679 (2010) (vacating the judgment of the circuit court ratifying a foreclosure sale and remanding for further proceedings on the exceptions to sale).

## Conclusion

The requirements of RP § 7-105.1 must be effectuated to give borrowers an opportunity to avoid foreclosure. A lender who relies on an old, incorrect notice of intent to foreclose flouts this requirement. Appellees would have saved themselves time and expense had they initially sent another notice of intent, with correct information and in compliance with the new law. In the case *sub judice*, although the NOI that was sent to Mr. Granados on March 10, 2010 complied with RP § 7-105.1 as valid notice of the foreclosure proceeding filed on April 30, 2010, that action was dismissed. When more than one year later Appellees filed their Order to Docket in the circuit court initiating a new foreclosure proceeding, they should have issued a new NOI.

For the foregoing reasons, the judgment of the circuit court must be reversed. On remand, the circuit court will set aside the foreclosure sale and dismiss the foreclosure action without prejudice.

> **JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.**
>
> **COSTS TO BE PAID BY APPELLEES.**